UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE WOLFE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL,<br><br>　　　　Defendant. | Case No. 15-cv-04141-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 23 |

Plaintiff Bruce Wolfe seeks review of a determination by the Social Security Administration that he was overpaid disability insurance benefits pursuant to 42 U.S.C. § 405(g). The parties' cross-motions for summary judgment are now pending before the Court. (Dkt. Nos. 17, 23.) After carefully the record and the parties' written submissions, and having had the benefit of oral argument, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's cross-motion.[1] Judgment in Defendant's favor is required because the Administrative Law Judge's decision that Plaintiff is liable for repayment of $30,455.00 in overpaid benefits was free from legal error and supported by substantial evidence.

**BACKGROUND**

Plaintiff began receiving disability insurance benefits on April 1, 1992. (Administrative Record ("AR") at 60.) From 1998 until 2003, Plaintiff was a student at San Francisco State University, during which time he served as an elected member of the University's student council.

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8 & 12.)

(AR 153.) Plaintiff worked an estimated six to ten hours per month performing a wide range of activities, including planning agendas, monthly tabling at informational events, lobbying of University administrators and government officials, research, and attending board meetings and statewide conferences. (AR 158-167.) For this work, the University paid Plaintiff a monthly stipend ranging from $248.21 to as much as $1225 while serving on the student council from March 1999-March 2001 and from March 2002-March 2003. (AR 49-50.) The University asked Plaintiff to complete a W-4 form in connection with his stipend and student government work. (AR 156.) This money did not have a stipulated use attached; Plaintiff received a monthly check and could deposit the money into his personal bank account and use it as he pleased. (AR 157.)

On November 24, 2005, Plaintiff was informed by the Social Security Administration ("SSA") that he had been overpaid his Title II benefits by a total of $30,455.00 from January 2000-April 2000; May 2002-November 2002; December 2002-November 2003; December 2003-November 2004; and December 2004-November 2005. The SSA notified Plaintiff that his allotted nine-month trial work period, during which a social security recipient is allowed to test his or her ability to work while still receiving benefits, had been triggered by his student government work and had effectively ended his eligibility to continue receiving benefits.

A trial work period is a limited period during which a disability recipient may test his or her ability to work without jeopardizing his or her disability status or benefits. 20 C.F.R. § 404.1592(a). A trial work period begins when a claimant becomes entitled to social security disability benefits. 20 C.F.R. § 404.1592(e). As is relevant here, the trial work period ends when the claimant has performed "services" for nine months (which do not have to be consecutive) during a 60-month period. *Id.* § 404.1592(e)(2). "Services" means "any activity (whether legal or illegal), even though it is not substantial gainful activity, which is done in employment or self-employment for pay or profit, or is the kind normally done for pay or profit." 20 C.F.R. § 404.1592(b).

After a recipient completes a trial work period, the recipient may continue to test his ability to work during a 36-month reentitlement period, also known as an Extended Period of Eligibility ("EPE"). 20 C.F.R. § 404.1592a. During this 36-month period, "[t]he first time you work after

the end of your trial work period and engage in substantial gainful activity, [SSA] will find that your disability has ceased." *Id.* § 404.1592a(a)(1). "Substantial gainful activity" is defined as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510. SSA regulations include a table of monthly maximum earnings and if a benefits recipient earns more than the monthly maximum there is a presumption that the recipient engaged in substantial gainful activity for that month. *See* 20 C.F.R. 404.1574(b); *Keyes v. Sullivan,* 894 F.2d 1053, 1056 (9th Cir. 1990). If the claimant engages in substantial gainful activity during the reentitlement period, the recipient will receive benefits for the first month after the trial work period in which the individual engaged in substantial gainful activity and for the two subsequent months, regardless of whether the individual performed substantial gainful activity during those two months. *Id*. § 404.1592a(a)(2)(i). After this "grace period," however, the Commissioner stops paying benefits "for any month in which you do substantial gainful activity." *Id.*

Plaintiff challenged the SSA's decision that he engaged in "services" for purposes of the trial work period and had a hearing before an Administrative Law Judge ("the ALJ"). At the hearing, Plaintiff testified that he did not think he was an employee of the Associated Students of San Francisco State University Incorporated, the student organization in charge of student government. (AR 173-174.) His understanding of the stipend "was that it was to help with tuition and school books and stuff like that... I just really thought it was for like a scholarship or a grant because the student government had given out—were giving out grants to students anyway." (AR 173-176.) The stipend did not have taxes withheld and Plaintiff did not believe the stipend constituted wages. (AR 176.) Thus, Plaintiff argued that his student government stipend did not trigger a trial work period. Plaintiff insisted that he would have served on student government even without receiving a stipend, which he argued classifies his service as not normally done for pay or profit. (AR 181-182.) Plaintiff also claimed that including scholarship money as income for purposes of a trial work period was contrary to the intent of the trial work period regulations because it would punish disabled students for receiving scholarships. (AR 182.)

The ALJ issued a written decision holding Plaintiff liable for repayment of the full

3

1   $30,455.00.  (AR 12-16.)  The ALJ found that Plaintiff's student government activity was
2   "normally done for pay or profit" "since all those who were elected to student government
3   received a stipend for their participation, the amount of which varied depending on each student's
4   position." (AR 15.)  The ALJ rejected Plaintiff's arguments that he did not intend to be paid and
5   that his student government work was more educational than work-related.  (*Id.*)  These
6   arguments, the ALJ ruled, were immaterial and had no effect on whether Plaintiff's stipend
7   counted toward a trial work period.  The ALJ also found that Plaintiff owed the full overpayment
8   amount sought. In particular, she found the amount was justified by looking at the months where
9   Plaintiff's earnings exceeded the maximum amount allowed to avoid the presumption of engaging
10  in substantial gainful activity. (AR 15.)  Plaintiff appealed the ALJ's decision to the Appeals
11  Council, which denied the appeal. (AR 3.)  This action followed.

## LEGAL STANDARD

The Commissioner bears the burden of proving the fact or amount of overpayment. *McCarthy v. Apfel,* 221 F.3d 1119, 1124-25 (9th Cir. 2000).  A district court reviews the Commissioner's decision that a claimant has been overpaid benefits, including the overpayment amount, for substantial evidence.  *Id.*  Considering the administrative record as a whole, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006). "[W]here the evidence is susceptible to more than one rational interpretation" and the ALJ has provided a rational interpretation, the district court must uphold the decision of the ALJ.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

## DISCUSSION

Plaintiff insists the ALJ committed legal error for three reasons.  First, the trial work period rules do not apply to his student government work because student work is exempt under 20 C.F.R. § 404.1028 and 42 U.S.C. § 410(a)(10).  Second, because he did not receive taxable wages or a salary, his student government work does not constitute an activity normally done for pay or profit under 20 C.F.R. § 404.1592(b).  Third, because his student government work was not

4

"testing his ability to return to work" it should not qualify under the trial work period regulations. None of these arguments persuades the Court that the ALJ committed legal error.

### A. Plaintiff's Student Government Work was Not Exempt

Plaintiff first argues that his student government work cannot qualify as "services" for the purposes of 20 C.F.R. § 1592 because the social security statute, 42 U.S.C. § 410(a)(10), provides that "service performed in the employ of a school, college or university" or organization that is "organized, and . . . operated, exclusively" for and by the school does not count for purposes of Social Security benefits eligibility "if such service is performed by a student who is enrolled and regularly attending classes" at that school. Further SSA regulations explain that "if your main purpose is pursuing a course of study rather than earning a livelihood, we consider you to be a student and your work is not considered employment." 20 C.F.R. § 404.1028(c). Plaintiff reasons that the trial work period/reentitlement period regulations must be read in conjunction with this statute and regulation and that his work on student government qualifies under these employment exemptions. Because Plaintiff's main purpose was pursuing his studies rather than earning a livelihood on his student government stipend, the student government work should not count as employment.

While Plaintiff is correct that his student government service does not qualify as "employment" under 42 U.S.C. § 410(a) and 20 C.F.R. § 404.1028(c), that statute and regulation do not apply to determinations of whether a disability recipient has completed a trial work period. Instead, they address whether a person has engaged in covered employment, that is, employment that qualifies a person to receive social security benefits. *See* 20 C.F.R. § 404.1001(a)(1); *id.* § 404.1012. Covered earnings are "earnings for which you will receive credit for benefits purposes" and "earnings on which you must pay social security taxes." 20 C.F.R. § 404.1001(c). Earnings from student work are not covered earnings. *See* 42 U.S.C. § 410(a)(10); 20 C.F.R. § 404.1028(c). The relevant question under the trial work period regulation is not whether Plaintiff's student government work constituted covered earnings, but rather, whether it constituted "services," that is, an activity of "the kind normally done for pay or profit." 20 C.F.R. § 404.1592(b).

Plaintiff laments that it is unfair that his student government service would not qualify him for social security benefits but could disqualify from receiving benefits. That is a policy decision for the legislative and executive branch, not the judicial branch, and thus not a basis for reversing the ALJ. Moreover, while those services were not covered earnings, he also did not have to pay social security taxes on them. 20 C.F.R. § 404.1001(c).

### B.     Substantial Evidence Supports the ALJ's Decision That Plaintiff's Student Government Work Constitutes "Services"

Next, Plaintiff contends that because student government activity is not normally done for pay or profit, it does not constitute "services" under 20 C.F.R. § 404.1592. As support for this argument Plaintiff emphasizes that his student government earnings were not taxed and that he was not a University employee testing his ability to work, but merely part of the University's student council.

That Plaintiff's stipend was not taxed does not mean his work could not qualify as "services" under a trial work period. Section 404.1592 merely considers whether one is capable of returning to the workforce in some capacity and therefore no longer eligible to receive disability benefits. Similarly, Section 404.1592a asks whether one is engaged in "substantial gainful activity" and not employment.

Further, that Plaintiff's services were performed as a student council member as opposed to testing his ability to work in a more traditional position also does not mean the ALJ erred. A claimant's disability ceases when a claimant demonstrates a continuing ability to engage in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). There was substantial evidence for the ALJ to conclude that Plaintiff demonstrated an ability to engage in substantial gainful activity regardless of the capacity in which he performed this work. As the ALJ found, as a student council officer Plaintiff performed such services as planning agendas, monthly tabling at informational events, lobbying of university administrators and government officials, research, and attending statewide meetings and conferences. (AR 158-165.) That Plaintiff would have performed the work even absent any pay is immaterial.

1    Moreover, Plaintiff's receipt of a W-4 is relevant to whether Plaintiff's student government work was of the type "normally done for pay or profit" and thus constitutes "services" under Section 404.1592. The ALJ concluded that the issuance of the W-4 form was evidence that the University considered its relationship with Plaintiff to be "an 'employment' relationship" and considered "the claimant an 'employee.'" (AR 15.) While the inquiry under Sections 404.1592(b) and 404.1592a is not whether Plaintiff's work constituted employment, that Plaintiff received a W-4 coupled with the fact that "all of those who were elected to student government [at San Francisco State University] received a stipend for their participation," supported the ALJ's finding that at San Francisco State University student government work was normally done for pay or profit. (AR 15.)

At oral argument, but not in his brief, Plaintiff relies on a statement from the student government executive director stating that Plaintiff was "not an employee but an elected official." (AR 108-109.) This evidence, however, does not mean that the ALJ's finding that Plaintiff's student government work was normally done for pay or profit was not supported by substantial evidence; it is evidence that he was not a University employee in the legal sense.

Lastly, Plaintiff insists that the government's definition of services is over broad and defines everything as falling within the trial work period rules. Plaintiff extrapolates that under the SSA's theory activities like purchasing a lottery ticket could be considered labor, with any potential winnings triggering a trial work period. Not so. The trial work period allows disabled individuals to test their ability to work *over nine months* without fear of losing their benefits. 20 C.F.R. § 404.1592. There is no risk of a disabled individual immediately losing benefits because of unexpected earnings in a short period of time; the recipient must perform "services," and the services must be performed for nine separate months. The ALJ did not commit legal error.

### C.     Plaintiff's "Hail Mary" Falls Short

At oral argument Plaintiff asked for a remand to address the calculation of the overpayment even though his papers never hint that he is challenging the overpayment as a factual matter. No remand is appropriate. Plaintiff was unable to articulate any reason to believe the

7

overpayment was incorrect, and, in response to an inquiry from the Court, the SSA explained in detail why the ALJ's calculation is correct.

## CONCLUSION

For the reasons explained above, Plaintiff's motion for summary judgment is DENIED and Defendant's motion is GRANTED. This Order disposes of Docket Nos. 17, 21.

**IT IS SO ORDERED.**

Dated: March 29, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge